IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| EVERGREEN SPORTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:12CV911–HEH |
| ) | |
| SC CHRISTMAS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Cross Motions for Summary Judgment)

This is, in essence, a contract dispute over the merchantability of inventory acquired for resale under an Asset Purchase Agreement (the "Purchase Agreement"). Although the Purchase Agreement also embraced real property, only those portions of the Purchase Agreement pertaining to inventory goods is at issue. The case is presently before the Court on cross Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. Both parties have filed memoranda supporting their respective positions. The Court heard oral argument on September 25, 2013. For the reasons stated below, Plaintiff's motion will be granted and Defendants' motion will be denied.

The dispute underlying this litigation involves the purchase of real estate located at 300 Hotze Road, Pocahontas, Arkansas (the "Pocahontas Warehouse"), and with certain designated exclusions, all inventory located in that structure. The inventory included products with professional and college team logos, including programmable pens, Christmas wreaths, football and helmet pens, super balls, nutcracker musicals, acrylic

ornaments and desk sets. Plaintiff's central claim is that the products purchased were nonconforming, in that they were damaged, defective, or otherwise unsellable. Other sports products were either not licensed for commercial sale or were subject to license which had expired. Section 11(f)(i) of the Purchase Agreement warrants that the inventory at issue is "merchantable, usable and salable in the ordinary course of business" and is "free from defects in materials and workmanship." (Defs.' Mem. Support Mot. Summ. J., Ex. A at 6, ECF No. 35.)

The Defendant sellers, on the other hand, maintain that Plaintiff failed to exercise the contractual remedy for nonconforming goods and is barred from recovering damages at this point. Furthermore, the Defendants contend that Plaintiff has failed to advance evidence that the defects alleged occurred prior to closing and delivery.

The standard of review for motions for summary judgment is well settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving [parties are] entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In reviewing a motion for summary judgment, the court must review the facts in the light most favorable to the non-moving party. *Id.* at 255. In

its summary judgment analysis, the court cannot weigh the evidence or make credibility determinations. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of 'some metaphysical doubt' concerning a material fact." *Lewis v. City of Virginia Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). In other words, "the plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257 (emphasis added).

Furthermore, a "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is

3

determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

When faced with cross motions for summary judgment, the court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997) (citations omitted). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party" opposing that motion. *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (4th Cir. 1996).

The Court will turn first to the Defendants' Motion for Summary Judgment. Initially, the Defendants argue that they are entitled to judgment as a matter of law because Plaintiff has defaulted on the remedies provided in Sections 8 and 9 of the Purchase Agreement. This section requires the purchaser to conduct a physical inventory count and to use "commercially reasonable efforts to cause [a] Closing Inventory Statement to be delivered [to seller] not more than forty-five (45) days following the Closing Date." (Defs.' Mem. Support Mot. Summ. J. Ex. A at 4-5.) That section specifies that the closing date is the date of delivery of inventory.

4

Section 9 of the Purchase Agreement provides for a thirty day dispute period. This period is intended to allow for the resolution of any disputes regarding the inventory and the purchase price.[1]

> If Seller does not give a written notice of a Dispute presented to the Purchaser within the Dispute Period ("<u>Dispute Notice</u>"), the Closing Inventory Statement shall be deemed to have been accepted and agreed to by Seller in the form in which it was delivered to Seller, and shall be final and binding upon the parties hereto.

(Defs.' Mem. Support Mot. Summ. J., Ex. A at 4.) The provision which follows, Section 9(b), allows for the resolution of any disputes concerning the closing inventory statement not settled within the thirty day dispute period. Section 9(b) allows for an arbitrating accountant "to conform the Closing Inventory Statement to the requirements of Section 8." (*Id.*) The Defendants maintain that Sections 8 and 9 provide an exclusive remedy for any disputes involving the merchantability of inventory items. This conclusion is unsupported by the text of the Purchase Agreement and authorities cited by Defendants.

Defendants' reliance on *Smith v. Berwin Builders, Inc.*, 287 A.2d 693 (Del. Super. Ct. 1972) is misplaced. The court in *Smith* restated the well settled axiom that language constraining legal remedies must be clear and unequivocal. *Id.* at 695; *see also JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 466 (D. Del. 2011); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 549 (Del. Super. Ct. 2005). The language of Sections 8 and 9 lacks this requisite clarity.

---

[1] It is the obvious intent of the parties that any nonconforming items of inventory be noted on the closing inventory statement and the parties agree that the purchase price will be adjusted. Plaintiff filed its initial closing inventory on June 20, 2012 and amended versions on July 2, 2012 and September 17, 2012. Neither party addresses whether this was a commercially reasonable time frame given the volume of inventory.

5

In weighing the arguable effect of Sections 8 and 9, it is important to note that this lawsuit was filed on December 31, 2012. Defendants first raised their claim preclusion argument in the immediate motion for summary judgment, filed approximately six weeks from the date of trial. Notwithstanding any legal significance the remedies in Sections 8 and 9 may have, this Court is of the opinion that the Defendants have waived the benefits of those provisions by actively participating in sufficient litigation.

To warrant a finding of waiver of an arbitration clause[2], there must be more than a "mere delay" in requesting arbitration; "[r]ather, the party asserting waiver must demonstrate prejudice." *Anadarko Petroleum Corp.*, 1987 Del. Ch. LEXIS 464, at *24 (citation omitted); *see also MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser v. Merrill Lynch Pierce, Fennder & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987)) ("[E]ven in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, 'the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.'").[3] The court will consider "the extent of the moving party's trial-oriented activity." *Fraser*, 817 F.2d at 252. In other words, "'where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party

---

[2] Delaware arbitration law mirrors federal law, and thus Delaware and federal law are cited in this analysis. *See Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 581 (Del. Ch. 2006). Pursuant to Section 19(f) of the Purchase Agreement, its validity, enforcement, interpretation, construction and effect is governed by the laws of Delaware. (Defs.' Mem. Support Mot. Summ. J., Ex. A at 14–15.)

[3] The immediate case is somewhat of an anomaly. Rather than invoke the arbitration provision of Section 9 to compel arbitration, the Defendants argue that Plaintiff's failure to do so is an affirmative defense. Defendants' brief offers no authority supporting this theory and this Court's research yields none.

opposing . . . a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.'" *Id.* at 252 (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)). Thus, where a party "has actively participated in a lawsuit or taken action inconsistent with its right to arbitrate" a court may find it has waived arbitration. *Smyrna v. Kent Cnty. Levy Court*, No. 244-K, 2004 Del. Ch. LEXIS 163, at *10 (Del. Ch. Nov. 9, 2004) (footnote omitted).

Defendants argue that Plaintiff is barred from bringing its claims because it did not pursue what Defendants describe as the "exclusive remedy" provision of Section 9, i.e., the arbitration clause of the Purchase Agreement. While Plaintiff may not have followed the closing and dispute procedure of Sections 8 and 9 of the Purchase Agreement, the parties are barred from raising arbitration at this late stage in the litigation – and as trial approaches on October 29 and 30, 2013.

Defendants have "actively participated in a lawsuit [and] taken action inconsistent with [the] right to arbitrate" by proceeding with pretrial litigation, including filing a Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction, a proposed Counterclaim for Indemnification and a Motion for Summary Judgment. *Smyrna*, 2004 Del. Ch. LEXIS 163, at *10. Their only mention of arbitration is in their cross motions for summary judgment presently before this Court. To permit Defendants to invoke arbitration on the eve of trial would prejudice Plaintiff. Accordingly, the parties have waived arbitration as an avenue for resolution of this

7

dispute.[4] Defendants' assertion of the arbitration clause as an affirmative defense stands on even less firm terrain.

Equally unavailing is Defendants' argument that Plaintiff's breach of contract claim is foreclosed by its failure to timely file a closing inventory statement pursuant to Section 8 of the Purchase Agreement. The underlying transaction apparently involved the purchase of several hundred thousand items situated in a warehouse. Whether Plaintiff's delinquent filing of the closing inventory was commercially reasonable is unclear on the present record. Given the manner in which some of the items were packaged, the defects were not readily detectable. Moreover, the content could not be inspected without destroying the packaging. (Pl.'s Mem. Support Mot. Summ. J. Ex. 5 at 3, ECF No. 37.)

Section 8 of the Purchase Agreement provides a contractual mechanism for determining the final purchase price based on a closing inventory compiled from a physical inventory count conducted by purchaser. Section 9(a) allows for an adjustment to the purchase price based on the amounts reflected on the closing inventory statement. Disputes regarding the closing inventory statement are to be resolved under Section 9(b) by an arbitrating accountant. To imply that an arbitrating accountant's function would include resolution of quality and contract conformance disputes is a bit strained. The

---

[4] Even if the parties had not waived arbitration, the arbitration clause does not apply to the entire Purchase Agreement. It merely applies to "Disputes Regarding Closing Inventory Statement" as the title of Section 9 and Section 9 itself plainly state. Thus, the arbitration clause does not extend beyond matters relating to the closing inventory statement.

8

arbitrating accountant's contractual duty is to finalize the closing inventory statement. No mention is made in Section 9(b) of any type of quality assessment.

Contrary to Defendants' argument, the provisions of Sections 8 and 9 do not trump the other representations and warranties in Section 11 of the Purchase Agreement. As Plaintiff points out, its breach of contract claim is not a price dispute – it is a quality and conformance dispute. Plaintiff contends that the bulk of the goods purchased were not in the condition represented in the Purchase Agreement, namely suitable for resale, at the time of delivery. This is the core of the controversy at hand. Plaintiff simply did not get what it bargained for.

Plaintiff maintains that aside from a *de minimis* number of sellable items, the vast majority of the inventory was defective or unlicensed for resale.[5] Furthermore, based on the number of items returned as defective, Plaintiff elected to cease all sales of products acquired from Defendants. Plaintiff therefore seeks damages for the entire inventory of items acquired from Defendants.

Despite Defendants' contention to the contrary, Plaintiff proffers in its Motion for Summary Judgment virtually unrebutted evidence that Defendants were aware of the defective nature of the inventory prior to sale. Two prior managerial employees of Defendants who transitioned to Plaintiff after the warehouse in which they were

---

[5] A large number of the items in the inventory bore sports logos which required specific licensure for commercial distribution. A number of the sports products bore "team logos that SC Christmas was never licensed to sell, products with expired logos that could not be sold, products that could not be sold because the old license . . . had expired prior to the sale." (Pl.'s Mem. Support Mot. Summ. J. Ex. 3 at 2).

9

employed was conveyed under the Purchase Agreement, confirm Plaintiff's claim. Derrick Difani ("Difani"), manager of the Pocahontas Warehouse under SC Christmas, and David Futrell ("Futrell"), the former assistant manager, have filed sworn declarations describing Defendants' inability to sell the inoperable, defective and damaged sports inventory prior to entering into the Purchase Agreement with Plaintiff.

For example, in his sworn declaration, Difani, manager of the Pocahontas Warehouse, recounted a conversation with Kirk Aldridge, an officer of Defendant SC Christmas, Inc. "Shortly before the sale to Evergreen Sports, I had a conversation with Kirk Aldridge regarding the defective and unsellable nature of the wreaths. Kirk Aldridge told me to take the defective and unsellable wreaths that already had been pulled from inventory, re-box them, and put them back into inventory with other inventory that was being sold to Evergreen Sports." (Pl.'s Mem. Support Mot. Summ. J. Ex. 5 at 6.)

Furthermore, in July 2013, Futrell, assistant manager of the Pocahontas Warehouse, was tasked by Plaintiff with examining and testing the remaining inventory for defects and functionality. The majority were found by Futrell to be too defective for resale. (Pl.'s Mem. Support Mot. Summ. J. Ex. 4 at 4–10.) Futrell determined that helmet and football pens failed to light even with new batteries (*id.* at 4.); the Christmas wreaths were infested with bugs and had berries and garland missing (*id.* at 7); musical nutcrackers did not function (*id.* at 8); acrylic ornaments had corroded batteries (*id.* at 9); and the desk sets were damaged at the base and bore defective paint (*id.* at 10). Both Difani and Futrell concluded that due to its condition, the inventory purchased from

Defendants could not be sold in the ordinary course of business. Their conclusion is further corroborated by the sworn declaration of Christopher Wornom, Business Development and Acquisition Manager at Evergreen Enterprises. (Pl.'s Mem. Support Mot. Summ. J. Ex. 3 at 1–2).

In response and in support of its Motion for Summary Judgment, Defendants offer the results of a test count of a limited quantity of the units in the inventory by Brundige, Payne & Company, PC ("Brundige"), certified public accountants. The test was conducted at Plaintiff's request prior to delivery. As part of their test count, Brundige also agreed to "make note of damaged inventory that comes to our attention." (Defs.' Mem. Support Mot. Summ. J, Ex. 11 at 1.) In the damaged inventory schedule appended to Brundige's report, they noted "[n]o damaged inventory was noted during the performance of test counts on March 27, 2012." (*Id.* at Ex. 12 at 14.) Although the inventory count included only a random sampling of inventory and focused on numbers not condition, Defendants contend that it is probative evidence of the condition of at least a portion of the goods at the time of delivery and warrants an award of partial summary judgment in their favor. Aside from significant evidentiary hurdles discussed below, these test results must be weighed against Plaintiff's countervailing testimony that the Defendants were aware of the damaged condition of the goods prior to delivery.

Alternatively, the Defendants argue that they are entitled to judgment as a matter of law as to certain subsets of the inventory. These categories include goods for which no license conveyed, undamaged goods which Plaintiff elected not to sell and goods which required replacement batteries. Whether these items can form the basis of an

actionable claim for breach of warranty turns on what constitutes "merchantable, usable and salable in the ordinary course of business." None of these terms are defined in the Purchase Agreement and Delaware case law is scant. The term "merchantable" is generally understood to mean "fit for the ordinary purposes for which such goods are used." *Hyatt v. Toys "R" Us, Inc.*, 930 A.2d 928 n.3 (Del. Sup. Ct. 2007). The words "usable" and "salable" being non-legal terms, must be ascribed their common ordinary meaning. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. Sup. Ct. 2006).

In both their memoranda supporting summary judgment, and at oral argument, Defendants maintain that the Brundige inventory and accompanying damaged inventory schedule is at least sufficient to kindle a genuine issue of disputed material fact. However, the Brundige inventory was submitted to the Court as an unauthenticated free-standing exhibit, untethered to a sworn affidavit. (Defs.' Mem. Support Summ. J. Ex. 11.)

As the United States Court of Appeals for the Fourth Circuit restated in *Orsi v. Kirkwood*, "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. . . . To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." 999 F.2d 86, 92 (1993) (citations and internal quotation marks omitted). The Brundige inventory falls short of this critical mark. Even if the proffered exhibit was authenticated by an accompanying affidavit, given the context of its creation, it would wither under the strength of the testimony forecast by

Plaintiff.[6] As the Supreme Court has repeatedly stressed, more than a scintilla of evidence is required to create a genuine issue of material fact. *Anderson*, 477 U.S. at 249–50.

The Court will therefore grant Plaintiff's Motion for Summary Judgment as to liability on Count I, the breach of contract claim. Defendants' cross motion will be denied. The Court, however, finds the record inadequate to assess damages with any reasonable degree of certainty. Therefore, absent stipulations between the parties, the Court will hear evidence on damages, along with evidence and argument on Count II, the indemnification claim, on October 29, 2013 at 9:00 am.

An appropriate Order will accompany this Memorandum Opinion.

                                                  /s/
                                     Henry E. Hudson
                                     United States District Judge

Date: Oct. 4, 2013
Richmond, VA

---

[6] Counsel for Defendants confirmed at oral argument that his clients intended to use the inventory report for impeachment and not as affirmative proof of fact. Since the unauthenticated report constitutes inadmissible hearsay, it cannot be considered on a motion for summary judgment. *Maryland Highway Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251–52 (4th Cir. 1991). Evidence offered solely for impeachment will not defeat a properly supported motion for summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (1993); *United States v. Glassman*, 562 F.2d 954, 958 (5th Cir. 1977).